IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 09-cv-02503-WDM-GJR

HOME DESIGN SERVICES, INC.,

    Plaintiff,

v.

STARWOOD CONSTRUCTION, INC.,
KERRY LEE HANKE, and
DIANE HANKE,

    Defendants.

---

**ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE**

---

Miller, J.

This matter is before me on Plaintiff's Amended Motion for Summary Judgment (ECF No. 61) and Motion to Strike, in Part, Defendants' Summary Judgment Evidence (ECF No. 108). Defendants oppose both motions. I have reviewed the parties' written arguments and conclude that oral argument is not required. For the reasons that follow, the motion for summary judgment will be granted in part and denied in part. The motion to strike will be denied without prejudice.

### Background[1]

Plaintiff is a residential design firm that creates and sells house plans. Its plans are available for sale through magazines and publications as well as the internet. Plaintiff is

---

[1] The facts set forth here are taken from the pleadings and the parties' exhibits in support of their briefs and are undisputed, except as noted.

owned by James Zirkel and his wife Janice Zirkel.

One of the Plaintiff's designs is known as the HDS-2089 (the "2089"). The 2089 is a design for a one-story single family home containing four bedrooms, three bathrooms, a living room, dining room, kitchen opening to a family room, a covered patio, and an attached double garage. Plaintiff presents evidence in the form of a declaration from Mr. Zirkel stating that Mr. Zirkel independently created the 2089 on behalf of a client around 1991; he states that he did not copy the design from any other work or home design plan. Exh. 1 to Pl.'s Mot. for Summ. J., ECF No. 61-4. Plaintiff registered a copyright on the 2089 in 2000. Exh. 3 to Pl.'s Mot. for Summ. J., ECF No. 61-6. The original registration identified the "Nature of the Work" as "Construction Documents" and the "Nature of Authorship" as a "Technical Drawing." *Id.* According to the original registration, the work was created in 1991 and first published August 11, 1991. *Id.* Thereafter, on October 26, 2004, Plaintiff filed a supplement or amendment to the registration, claiming that the work should be identified as "Architectural Works/House Plan" and that the nature of authorship was as an "Architectural Work." *Id.* The date of first publication was also changed to December 29, 1992. *Id.* As an explanation for the change, Plaintiff stated "application was intended to be Architectural Works, advised by previous counsel that all registration were to be registered as Construction Documents" and that the work was "incorrectly submitted as a Technical Drawing, should have been Architectural Work." *Id.*

Plaintiff has another design called the HDS-1758 (the "1758"), which is derivative of the 2089 in that it has deleted one bedroom and one bathroom but otherwise contains the same elements and layout. Mr. Zirkel declares that the 1758 was derived from the 2089 but otherwise was independently created by him and was not copied from any other

2

work or home design plan. Exh. 1 to Pl.'s Mot. for Summ. J., ECF No. 61-4. According to Mr. Zirkel, the 1758 was specifically designed to make it easy for a homeowner to later add the fourth bedroom and third bathroom in the same location it is on the 2089 should the homeowner wish to do so. *Id.* The 1758 was copyright registered in 2003. Exh. 6 to Pl.'s Mot. for Summ. J., ECF No. 61-9. The registration identifies the work and authorship as an architectural work and identifies the creation date as 1992 and first publication as approximately September 1, 1992. *Id.* The registration was also amended in November 2005 to change the initial publication date of the 1758 to March 1, 1994. *Id.*

Plaintiff presents evidence that it has published catalogues containing plans of the 2089 and 1758 for many years and widely distributed them. The evidence shows that Plaintiff has marketed and advertised its plans, including the 2089 and 1758, in a number of magazines and publications since the mid 1990s. The plans have also been published on a number of websites since 2000. Plaintiff presents evidence from the publisher and distributer of *Better Homes and Gardens* magazine showing that advertisements containing floor plans for the 1758 or 2089 were published in the *Better Homes and Gardens* "Designers Showcase" special publication in 1998, Feb/Mar 2001, and April/May 2002, and in another related publication in 2002. Exh. 7 to Pl.'s Mot. for Summ. J., ECF No. 61-11.

According to Mr. Zirkel, he visited Colorado in May 2008 and, while driving around Mesa County, he found multiple homes that he believed infringed on Plaintiff's copyrighted designs, including one built by Defendants. After further investigation he found the home at issue in this litigation, which is located on Jack Creek Road in Grand Junction, Colorado ("Jack Creek Home"). The Jack Creek Home was built by Defendants around 2004 and thereafter sold to a third party. Plaintiff contends that the Jack Creek Home infringes on

its copyright for the 1758 design. Plaintiff avers that it has searched its records and finds no evidence that any of the Defendants or anyone else connected the project ever purchased or was given rights to use the 2089 or the 1758. The cost of purchase of the plans in 2004 was $670 for the 2089 and $630 for the 1758.

Defendant Starwood Construction, Inc. ("Starwood"), is a construction company owned in equal part by Defendant Kerry Lee Hanke and his wife Defendant Diane Hanke. There are no other employees or officers of the company. Typically, the Hankes would develop and select designs for the houses built by Starwood, often using magazines and other publications for ideas. After purchasing a lot for construction, they would decide the building envelope to develop the house plan. Ron Kolpin, a local draftsman, would then help design a plan and specifications. At her deposition, Mrs. Hanke testified that during the design of the Jack Creek Home, Kolpin was having trouble understanding the concept the Hankes wanted for the layout of the dining room and breakfast nook so she showed him a floor plan from a recent *Better Homes and Gardens* publication to assist in the design. Exh. 12 to Pl.'s Mot. for Summ. J., ECF No. 61-16, at 51. The plans for the Jack Creek Home are dated November 21, 2003 but it is unclear when exactly the design was done. Exh. 13 to Pl.'s Mot. for Summ. J., ECF No. 61-17.

Defendants present evidence from a retained expert witness, Eugene Schmitt, an architect. He has provided an expert report and given evidence in a deposition. Schmitt Report, Exh. 1 to Defs.' Resp., ECF No. 77-1. He opines that neither the 2089 nor the 1758 are original because they contain many of the same features and arrangement of elements as several other house designs developed earlier and/or because the design is the natural result of necessity or common design requirements. *Id.* Mr. Schmitt provides

example front facades and floor plans of houses he contends are similar and which preceded the 2089 and 1758. *Id.* Nonetheless, Mr. Schmitt noted few variances between the 1758 and the Jack Creek Home, primarily a few size differences and changes in window designs. *Id.*

Plaintiff has provided evidence that Defendants made $63,175.12 in profit from the construction and sale of the Jack Creek Home. Defendants dispute this by offering evidence that some of this amount is attributable to the general increase in the real estate market in Grand Junction and that they incurred additional costs. Plaintiff seeks to strike this supplementary evidence.

Plaintiff filed its complaint in this court asserting a claim of copyright infringement. Amended Complaint, ECF No. 66.[2] Plaintiff generically asserts contributory and/or vicarious liability as an alternative basis for the claim, apparently against the Hankes for the actions of Starwood. *Id.* ¶¶ 12-13. Plaintiff seeks damages and injunctive relief. *Id.* ¶¶ 14-16. Plaintiff moves for summary judgment as to liability, damages, and Defendants' affirmative defenses.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A moving party's burden is met if the moving party demonstrates that there is "an absence of

---

[2]A second claim alleging infringement of another design, the HDS-2224, was also asserted but that claim has been dismissed. ECF No. 53.

evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## Discussion

Copyright protection extends to architectural drawings as "architectural works," 17 U.S.C. § 102(a)(8), and as pictorial, graphic, and sculptural works, 17 U.S.C. § 102(a)(5). *The Harvester, Inc. v. Rule Joy Trammel + Rubio, LLC*, 716 F. Supp. 2d 428, 436 (E.D. Va. 2010) (citing cases). The definition of an "architectural work" includes "the overall form as well as the arrangement of spaces and elements in the design, but does not include individual standard features" such as common windows, doors, and other staple building components. 17 U.S.C. § 101; *Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 919 (11th Cir. 2008). To succeed on a claim of copyright infringement, a plaintiff must show (1) ownership of a valid copyright; and (2) that the defendant copied constituent elements of the work that are original to the plaintiff (i.e., elements protectable by copyright). *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1262 (10th Cir. 2008).

   1.   Validity of Copyright

Defendants dispute that Plaintiff can show that it has valid copyrights on the two designs as a matter of law. To meet the burden of proving ownership of a valid copyright, "the plaintiff must show that the work is original and that the applicable statutory formalities were followed." *Montgomery v. Noga,* 168 F.3d 1282, 1289 (11th Cir. 1999). A Copyright Office Certificate of Registration obtained within five years of first publication constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Here, however, Plaintiff's copyright registration for the

6

2089 was not obtained within five years of its first publication, nor was the registration for the 1758. Therefore, Plaintiff is not entitled to a presumption regarding the validity of its copyrights. *Id.*

Defendants challenge both Plaintiff's compliance with the requisites of the Copyright Act and the originality of the works. First, Defendants assert that Plaintiff did not properly follow the law regarding registration because the architectural plans must be registered separately as technical drawings and architectural works; Defendants assert that it was improper for Plaintiff to file a supplement to recast the technical drawing registration as architectural work registration, citing 27 C.F.R. § 202.11(c)(3).[3] Therefore, Defendants assert that Plaintiff's supplemental registration is invalid and Plaintiff can only claim an infringement of a technical drawing, not an architectural work.[4]

In response, Plaintiff argues that although separate registrations are required to obtain a copyright on both technical drawings and architectural works, the regulations do not prohibit changing a registration from a technical drawing to an architectural work. I agree. Plaintiff has asserted only one claim based on infringement of an architectural work, which can include architectural plans, and does not claim infringement of a technical drawing, which would require a separate registration. Defendants have not provided legal

---

[3]"Where dual copyright claims exist in technical drawings and the architectural work depicted in the drawings, any claims with respect to the technical drawings and architectural work must be registered separately."

[4]Defendants also argue that Plaintiff did not disclose that the 1758 was based on an earlier work, but this assertion is not supported as the 1758's registration clearly indicates that it is a changed version of another work already registered with the Copyright Office, identifying specifically the registration number of the 2089. Exh. 6 to Pl.'s Mot. for Summ. J., ECF No. 61-9.

authority to show that a registration allegedly filed in error cannot be modified as Plaintiff did here. Defendants have not identified any false statements in either the original or the supplemental registrations that might show invalidity. Accordingly, I will give the registrations whatever weight I deem appropriate in my discretion. 17 U.S.C. § 410(c).

Second, Defendants dispute the originality of the plans and thus the eligibility of the 2089 and 1758 for copyright registration. Only original works of authorship may be protected by copyright. 17 U.S.C. § 102; *Meshwerks,* 528 F.3d at 1262. To be entitled to protection, a work must be "independently created by the author (as opposed to copied from other works)" and must possess "at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991). Plaintiff asserts that its declaration from Mr. Zirkel is sufficient to carry its burden in this regard and to show that its plans are validly copyrighted.

However, I conclude that there is a factual dispute as to originality. Defendants offer evidence from an expert witness that Plaintiff's design of the 2089 and 1758 incorporate common elements and layout of houses built in the time and area (Florida) where Mr. Zirkel worked. With respect to architectural works in particular, "while individual standard features and architectural elements classifiable as ideas are not themselves copyrightable, an architect's original combination or arrangement of such features may be." *Intervest*, 554 F.3d at 919. Mr. Zirkel has apparently stated in another case that not all elements of the 2089 are original or unique and that the split floor plan is not unique. *Home Design Servs., Inc. v. Stewart*, Case No. 3:09cv140-MCR/MD, 2011 WL 796741 at *3 (N.D. Fla., Feb. 28, 2011) (concluding that factual issues remained regarding Plaintiff's ownership of a valid copyright). Although the requisite level of creativity to establish originality for the purposes

of copyright is "low," *Feist*, 499 U.S. at 345, I will not make this determination as a matter of law. I conclude, giving the non-moving party the benefit of all favorable inferences, that a reasonable jury could find that Plaintiff's designs are not sufficiently original to warrant copyright protection[5]. Therefore, summary judgment is not appropriate on the validity of Plaintiff's copyrights.

   2.   Copying

"Copying" refers to "the infringement of a copyright holder's exclusive rights under a copyright." *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 n. 2 (10th Cir. 1996); 17 U.S.C. § 106 (an owner under copyright has the exclusive right to reproduce the copyrighted work, prepare derivative works based upon the copyrighted work, to distribute copies of or display the copyrighted work). A plaintiff can indirectly prove copying by demonstrating that the defendant had access to the plaintiff's copyrighted work and that there are probative similarities between the between the copyrighted material and the allegedly copied material. *Country Kids,* 77 F.3d at 1284. "Substantial similarity" is the operative term in infringement cases, meaning a determination of "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking materials of substance and value." *Id.* at 1288 (citation omitted). Determining substantial similarity is ordinarily a question of fact. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 943 (10th Cir. 2002). Access may also be inferred where a copyrighted work and an allegedly infringing work are "strikingly similar." *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d

---

[5]Alternatively, as discussed further below, even if the copyrights are valid, there are issues of fact as to whether Defendants copied protected aspects of the designs.

1171, 1179 (10th Cir. 2009).

Several courts have noted that architectural works are similar to "compilations" under the statute. *Intervest*, 554 F.3d at 919. Compilations of facts or preexisting data, such as telephone directories, are entitled to copyright protection to the extent that the work "features original selection, arrangement or coordination of facts as they appear in the 'work' as a whole." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 356 (1991). However, protection for such compilations is "thin" and generally requires a showing of "supersubstantial" similarity, essentially verbatim copying, to prevail on an infringement claim. *Transwestern Publ'g Co. v. Multimedia Mktg. Assoc., Inc.*, 133 F.3d 773, 776-77 (10th Cir. 1998). Courts considering protection of copyrighted architectural works have indicated that only the *original* arrangement and coordination of the common building elements are protected by copyright. *Intervest*, 554 F.3d at 919; *Oravec v. Sunny Isles Luxury Ventures, L.C.,* 527 F.3d 1218, 1223 (11th Cir. 2008).

In addition, other courts have observed that architectural drawings are subject to other copyright doctrines that limit the extent of copyright protections. These include the "merger" doctrine, which applies where an idea can only be expressed in a very limited number of ways. *The Harvester*, 716 F. Supp. 2d at 440 (citing cases). Similarly, where market demands, building codes, and functional demands dictate design elements, such components may not necessarily be protected by copyright. *Id.* at 441.

Plaintiff argues that the plans at issue in this case are strikingly similar and that copying must be inferred as a matter of law. I agree with Plaintiff that this evidence is strongly probative of this element of Plaintiff's claim but, given the questions regarding the validity of the copyright and other factual issues, decline to make such a finding as a matter

of law.

With respect to access, Plaintiff argues that its evidence shows that Defendants had access to his copyrighted plans as a matter of law. It points to the evidence regarding the publication of its plans in *Better Homes and Gardens* magazines and Mrs. Hanke's admission that she used a *Better Homes and Gardens* publication to show Mr. Kolpin, the drafter, the design she wanted. Defendants respond that Mrs. Hanke must have looked at a magazine around 2004 but that Plaintiff has no evidence of publication at that time. This, however, is again not supported by the evidence as it is undisputed that the drawings for the Jack Creek Home were completed in 2003. A reasonable jury could both find that Mrs. Hanke used a copy of a *Better Home and Gardens* publication containing Plaintiff's designs and that she did not. Therefore, summary judgment is not appropriate.

Finally, I turn to the issue of whether Defendants' design contains elements that are substantially similar to the protected elements of Plaintiff's design. In his deposition, Mr. Zirkel identifies the original design elements of the 1758 as follows: (1) easy conversion from a three bedroom to a four bedroom home; (2) the use of minimal hall space between the two bedrooms, causing a buyer to perceive the home to be bigger than its actual square footage; (3) using a bay window form for the breakfast nook and denting the form into the master bedroom to increase the size of the nook; (4) placement of the windows; (5) placement of the bed wall in the master bedroom; (6) placement of the tub in the master bath suite; and (7) optional placement of a fourth bedroom and pool bath. Zirkel Dep., Exh. 2 to Pl.'s Mot. for Summ. J., ECF No. 61-5, at 120-121. Again, Defendants' expert witness in his report opines that at least some of these are not original or novel in that they were common to the market at the time or were dictated by function. Schmitt Report, Exh. 1 to

Defs.' Resp., ECF No. 77-1. He also identifies certain dissimilarities between the Jack Creek Home and the 1758, including the overall size of the floor plan, differences in how the space is used, differences in the facade, and differences in the type of windows used. *Id.*

Given the "thin" copyright protection extended to compilations, the general principle that similarity is an issue of fact, and the factual disputes regarding the scope of copyright protection to the alleged original features of the 1758, I conclude that summary judgment in Plaintiff's favor is not appropriate.

### 3. Damages and Motion to Strike

Plaintiff also seeks summary judgment on the question of what damages it is entitled to if it prevails and argues that Defendants' evidence rebutting its damages claim should be stricken. Since Plaintiff has not established liability, I conclude that determination of damages is premature and I need not consider either Plaintiff's or Defendants' evidence in this regard. Therefore, I will deny without prejudice Plaintiffs' motion for summary judgment with respect to determination of damages and Plaintiff's motion to strike.

### 4. Vicarious Liability

Plaintiff argues that the undisputed facts demonstrate that Mr. and Mrs. Hanke should be vicariously liable for all acts of infringement committed by Starwood. "A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from another's infringing activity and has the right and ability to supervise the infringing activity." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir.2004) (internal quotation marks omitted), cited with approval by *La Resolana,* 555 F.3d at 1181. Plaintiff has presented evidence showing that the Hankes are the only persons through whom the

company acts and that they receive all the financial benefit of Starwood's activities. Defendants did not respond to this argument, although they denied any vicarious liability for the acts of Mr. Kolpin, which is not at issue. In the absence of any contrary facts or argument from Defendants, I will grant summary judgment to Plaintiff on this issue. See Fed. R. Civ. P. 56(e)(3).

### 5. Defendants' Affirmative Defenses

In their Answer, Defendants asserted twenty seven affirmative defenses, several of which have been withdrawn. Remaining at issue are the following affirmative defenses: (1) failure to state a claim; (2) waiver, estoppel, laches, and statute of limitations, based on the alleged failure of Plaintiff to investigate alleged infringing home designs in Colorado; (3) statutory damages and attorney fees, challenging Plaintiff's entitlement to statutory damages[6] and attorneys' fees under the Copyright Act if the registrations are invalid; (4) third party liability and failure to join an indispensible party, based on the assertion that their draftsman would be responsible for any alleged infringement rather than Defendants; (5) various defenses based on the alleged non-originality of Plaintiff's design, including utilitarian elements/ public domain; (6) coincidence or independent creation or innocent infringement, again disputing that Defendants copied Plaintiff's design; and (7) registration invalidity. Several of these affirmative defenses are essentially denials or disputes of the elements of Plaintiff's claim and, as there are issues of fact in this regard, summary judgment is not appropriate.

As to the defenses of waiver, estoppel, laches, and statute of limitations, regarding

---

[6]This issue has been resolved; Plaintiff has filed a notice indicating that it declines to pursue statutory damages. ECF No. 107.

the alleged failure of Plaintiff to act promptly after discovering allegedly infringing home designs in Colorado, there appear to be issues of fact precluding summary judgment. According to Mr. Zirkel, he visited Colorado in 2008 and found several examples of homes he believed infringed on his designs, including one built by Defendants, which thereafter led him to the Jack Creek Home.  However, as noted by Defendants, in deposition testimony, Mr. Zirkel testified that he has been making such trips to Colorado for some time. Zirkel Dep., Exh. 5 to Defs.' Resp., ECF No. 77-5, at 73-74.  I take judicial notice that the records of this Court show Plaintiff first filed a lawsuit regarding alleged infringement in September 2003.  Civil Action No. 03-cv-01804-ABJ -MJW.  Therefore, there are at least issues of fact regarding when Plaintiff could or should have discovered the Jack Creek Home.

Concerning the affirmative defenses involving the alleged liability of Mr. Kolpin, who drafted the plans at Defendants' direction, Defendants have not provided any persuasive legal authority or argument to show that Mr. Kolpin's role would relieve Defendants of liability for their own actions or that Mr. Kolpin is an indispensible party.  Therefore, I agree with Plaintiff that summary judgment on these defenses is appropriate.

Accordingly, it is ordered:

1. Plaintiff's Amended Motion for Summary Judgment (ECF No. 61) is denied in part and granted in part.  It is granted with respect to the vicarious liability of Defendants Kerry Lee Hanke and Diane Hanke for the actions of Defendant Starwood and with respect to Defendants' affirmative defenses regarding the role of Ron Kolpin, specifically the Fourteenth Affirmative Defense (Third Party Liability) and Twenty-Fifth Affirmative Defense (Failure

>    to Join Indispensible Party).  The motion is otherwise denied.

2.   Plaintiff's Motion to Strike, in Part, Defendants' Summary Judgment Evidence (ECF No. 108) is denied without prejudice.

DATED at Denver, Colorado, on July 13, 2011.

>    BY THE COURT:
>
>    *[signature]*
>
>    s/ Walker D. Miller
>    United States Senior District Judge